TARA K. McGRATH
United States Attorney
ARNE J. BUSSLER
Special Assistant United States Attorney
Ohio Bar No. 98829
AMY B. WANG
California Bar No. 306459
Office of the United States Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: 619-546-7058
Email: Arne.Bussler@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESSE JAKOB SANDERS,<br><br>Defendant. | Case No.: 3:23-CR-270-BAS<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: June 10, 2024<br>Time: 9:30 a.m.<br><br>The Hon. Cynthia Bashant |

The UNITED STATES OF AMERICA, by and through its counsel, Tara K. McGrath, United States Attorney, and Arne J. Bussler and Amy B. Wang, Assistant United States Attorneys, hereby files its Sentencing Memorandum in the above-captioned case. This Sentencing Memorandum is based upon the files and records of this case.

## I.

## INTRODUCTION

The United States submits this memorandum in support of its recommendation for a 120-month custodial sentence. This memorandum sets forth Defendant's drug dealing which led to the death of Z███████ ███████. Z███ was a 29-year-old husband and decorated Staff Sergeant in the Marine Corps. Defendant knew of the dangerous effects of opiates

due to her own addiction issues. But, Sanders sold Z▇ fentanyl powder resulting in Z▇'s death. When Z▇ messaged that the powder was strong for him, Defendant replied "I'm glad you enjoy the quality." Put directly, the United States seeks to hold Defendant accountable for her indifference to the dangers of drug dealing that caused Z▇'s death.

## II.

## STATEMENT OF THE CASE

Defendant was arrested for distribution of fentanyl and distribution of fentanyl resulting in death, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c), on February 27, 2023, pursuant to an indictment filed on February 16, 2023. ECF No. 1. On March 6, 2023, Defendant was arraigned on the two-count indictment. ECF No. 7. On January 11, 2024, Defendant pled guilty to count 2 of the indictment, distribution of fentanyl, pursuant to a plea agreement. ECF Nos. 45–49.

On April 5, 2024, United States Probation filed a Pre-Sentence Report ("PSR"). ECF No. 53. The PSR recommends a base offense level of 38 for distribution of fentanyl resulting in death. PSR ¶ 22. The PSR points out that Defendant agreed in the plea agreement she is ineligible for safety valve under USSG § 5C1.2(a)(3), since this offense did result in death. *Id*. ¶ 104. Probation applied a three-level decrease for acceptance of responsibility. *Id*. at 24-25.

The PSR noted that after acceptance of responsibility, the advisory guideline range would be 188 to 235 months. *Id*. ¶ 119. However, Probation recommended a variant sentence of 110 months in custody, followed by 3 years of supervised release. *Id*. ¶¶ 119-120. The United States joins Probation in its conclusions as to the base offense level and safety valve. The United States then covers the non-applicability of the zero-point offender adjustment and the 18 U.S.C. § 3553(a) factors.

The Defendant is scheduled for sentencing on June 10, 2024.

//

## III.

## STATEMENT OF FACTS

A.   Z███ "Z█" ███████ — ███ 1992 - January 2, 2022



|  |  |
|---|---|
| 1 | This case is about the death of a beloved Marine, "perfect husband," and brother |
| 2 | whose life was cut tragically short. Z▉▉▉ was "patient, caring, and hilarious," he "lit |
| 3 | up any room he walked into," and he was only 29 years old when he consumed a fatal dose |
| 4 | of fentanyl. PSR ¶ 14. Z▉▉ was born on ▉▉▉▉▉, in ▉▉▉▉▉▉. Following |
| 5 | graduation from ▉▉▉▉▉▉▉▉▉▉▉▉▉, he attended ▉▉▉ |
| 6 | ▉▉▉ College before enlisting in the Marine Corps on ▉▉▉▉. Zach and his wife, |
| 7 | ▉▉▉ met through mutual friends in ▉▉. They married in ▉▉▉▉ on ▉ |
| 8 | ▉▉▉ while Z▉▉ was still in boot camp. ▉▉▉ states that despite everyone saying |
| 9 | they were too young, marrying Z▉ was the best decision of her life. During the next |
| 10 | decade of his service and their marriage, they lived together in Illinois, North Carolina, |
| 11 | Okinawa, Japan, South Carolina, and most recently resided in Oceanside, California. Z▉ |
| 12 | registered over 250 net sea days and received an Afghanistan Campaign medal, a NATO |
| 13 | International Security Assistance Force medal, multiple sea service deployment ribbons, |
| 14 | certificates of commendation, letters of appreciation, and a Global War on Terrorism |
| 15 | Service medal. Z▉▉ was a trained combat marksmanship coach and martial arts instructor. |
| 16 | At time of his death, Z▉▉ had |
| 17 | re-enlisted three times with an |
| 18 | enlistment expiration on September |
| 19 | 11, 2022. His service included drill |
| 20 | instructor (DI) duty, but he was |
| 21 | recommended for relief from that |
| 22 | duty for good of the service on April |
| 23 | 10, 2020. At that time, he suffered |
| 24 | from generalized anxiety disorder due |
| 25 | to elevated job stress. Z▉▉ did not |
| 26 | enjoy his job as a DI, which is known to be one of the most demanding duties for enlisted |
| 27 | Marines. However, at no point was he determined to be an acute safety risk. Z▉▉ denied |
| 28 |  |



suicidal ideation and thoughts of self-harm, and he received counseling and mental health treatment, which continued upon his reassignment. The historical counseling records depict Z▮ quickly progressing and improving over time. At his worst, he scored 12 out of 27 points on the patient health questionnaire risk assessment. However, within months his score lowered to 8, 3, 2, and 0, where his score forever remained from August through December of 2020. Additionally, Z▮ received a promotion from Sergeant to Staff Sergeant. Two weeks prior to his death, Z▮ and ▮ celebrated their ▮-year wedding anniversary. His death occurred at a time when the couple had been trying for children and was looking forward to all the future had to offer.

The impacts of this needless and tragic death have been far reaching. 

### B. Zach's Death in January of 2022

On Sunday morning, January 2, 2022, Z▮ and ▮ had breakfast together at home, and Z▮ was planning to go to the gym and get some work done on base. ▮ was sick, and Z▮ even offered to bring her back some soup. However, ▮ did not hear from Z▮ after he left, which was unusual for a normal weekend day given the close nature of their relationship. After several hours, she began searching for her husband. Growing increasingly concerned, she opened his Facebook account where she discovered communications with the Defendant, whom he did not know. ▮ messaged, "who the fuck are you" and "is z▮ with you," however, the Defendant did not message her back.

She knew Z▮ kept a tracker in his wallet and was able to locate him outside a grocery store in the area. She decided to drive there. When she found his car and pulled up alongside, she immediately noticed him slumped over and blue. Distraught and hysterical, ▮ flagged down a passing Marine who immediately began performing chest compressions and mouth-to-mouth artificial ventilation while waiting for emergency services. Despite the quick arrival of first responders, they were unable to resuscitate the victim and pronounced him dead not long after. The Marine witness stated ▮ kept repeating "you can't leave me." In her impact statement, ▮ writes on that day, her life was "completely flipped upside down" and her "light has gone." PSR ¶ 14. To investigators, she blamed herself for not looking for her husband sooner.

C.  **The Law Enforcement Investigation**

Military police responded to the scene, but NCIS special agents with the Major Case Response Team (MCRT) conducted the investigation. Law enforcement cordoned off the scene and searched Z▮'s car where they found the baggie of powdered fentanyl Z▮ bought from Defendant. The powder tested positive for fentanyl and the later autopsy reported concluded that the cause of death was a fentanyl overdose.



6

On January 5, 2022, ▉, MD, an armed forces medical examiner, conducted the autopsy of Z▉'s body, and concluded that the cause of death was a fentanyl overdose. Dr. ▉ found a fentanyl toxicity level of 75 ng/mL, and he also determined that the metabolite norfentanyl was detected in Z▉'s blood at the level of 1.3 ng/mL. As context, the typical range of fatal fentanyl levels is between 5-120 ng/mLs.[1] The death certificate lists "fentanyl toxicity" and "accident" as the cause of death.

The NCIS investigators were able to recover overwhelming evidence tracing the fentanyl that killed Z▉ to the Defendant. The evidence shows that Z▉ reached out to the Defendant seeking to buy drugs on January 1, 2022. Z▉ and Sanders met the next day, January 2, 2022, at the Extended Stay America hotel in Carlsbad, California, where Sanders then sold ▉ a small bag of fentanyl powder. In addition to the Facebook messages, investigators reviewed the tracker location and historical cell site data, surveillance video from the Extended Stay hotel and Chevron gas station across the street from the Extended Stay hotel, conducted interviews of family and friends, and interviewed the employees of the Extended Stay America who recognized the Defendant from frequenting the hotel's facilities, even though there are no records that she has ever made a reservation there. Finally, a review of Z▉'s cellphone, vehicle, and house, resulted in no evidence of any other illegal drugs.

### D. Defendant's Involvement in Zach's Death

▉ deleted the Defendant as a "friend" from Z▉'s Facebook, resulting in her losing access to the messages. However, a search warrant was able to recover the lost messages. In reviewing the search warrant return, agents found a string of messages indicating Z▉ asked to buy "150 worth" of "H [heroin] or fent" from the Defendant. They met up the next day to conduct the transaction. In their final messages, Z▉ stated this stuff was strong for him and Defendant advised him to be safe and said, ":) I'm glad you enjoy the quality."

---

[1] Fatal Fentanyl: One Pill Can Kill; Mark E. Sutter, MD, et al.; the Society for Academic Emergency Medicine 2017:24:106-113. https://ww2.uthscsa.edu/artt/AddictionJC/2020-02-11-Sutter.pdf (last accessed May 24, 2024).

```
Author ▮▮▮▮▮ (Facebook: ▮▮▮▮)
Sent  2022-01-02 18:09:21 UTC
Body  You too and this stuff is pretty good please be careful

Author ▮▮▮▮▮ (Facebook: ▮▮▮▮)
Sent  2022-01-02 18:09:35 UTC
Body  I don't inject or anything just snort and its strong for.me

Author ▮▮▮▮▮ (Facebook: ▮▮▮▮)
Sent  2022-01-02 18:09:39 UTC
Body  Be safe

Author Jesse Sanders (Facebook: 100001986896431)
Sent  2022-01-02 18:10:19 UTC
Body  Absolutely :) I'm glad you enjoy the quality
```

### E. Arrest of Defendant on February 27, 2023

On February 16, 2023, an arrest warrant was issued by Judge Schopler. Defendant was arrested outside a 7-11 convenience store with assistance from Oceanside Police Department on February 27, 2023. Upon her arrest and subsequent booking, Defendant was denied entry at the metropolitan correctional facility for being under the influence of fentanyl. After agents informed the Defendant of the charges, Defendant asked, "who's Z▮▮▮?"

### F. Plea Agreement

On January 11, 2024, Defendant pled guilty to count 2 of the indictment, distribution of fentanyl, pursuant to a plea agreement. ECF No. 47. As part of her plea agreement, Defendant admitted to facts that establish the more serious offense of distribution resulting in death and stipulated that the Guidelines for that offense should apply. Pursuant to the parties' plea agreement, the United States recommends the following Guideline calculations, including departures and variances:

| Base Offense Level [U.S.S.G. §§ 2D1.1(a)(2) | 38 |
|---|---|
| Acceptance of Responsibility [U.S.S.G. § 3E1.1] | -3 |
| Appeal Waiver / Early Resolution [U.S.S.G. § 5K2.0] | -2 |
| Adjusted Offense Level | 33 |

The plea agreement permits the United States to oppose any downward adjustments, departures, or reductions not listed above. *Id.* Defendant waived all of her appellate rights save for ineffective assistance of counsel. *Id.* at 11. Defendant also acknowledged that she is not eligible for safety valve because this offense resulted in death or serious bodily injury to a person per U.S.S.G. § 5C1.2(a)(3). *Id.* at 10.

## IV.
## ARGUMENT FOR SENTENCING RECOMMENDATION

### A. Defendant Does Not Meet the Requirements of Safety Valve Because the Offense Resulted in Death

The Sentencing Guidelines allow for a two-level decrease in the offense level if a defendant meets the criteria for Limitation on Applicability of Statutory Minimum Sentences in Certain Cases, also known as "safety valve." USSG §§ 2D1.1(b)(18), 5C1.2. Safety Valve has five requirements: Defendant (1) has no disqualifying criminal history points; (2) did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (3) did not cause death or serious bodily injury to any person; (4) was not an organizer, leader, manager, or supervisor of others in the offense; and (5) has provided the Government a detailed factual proffer concerning the circumstances of the offense and her role therein. USSG § 5C1.2.

Here, Defendant fails to meet the third element: Defendant is not eligible for safety valve because her sale of fentanyl to the victim caused his overdose and death of fentanyl toxicity. PSR ¶ 9. Per the factual basis of the plea agreement, that fact and her ineligibility are uncontested. ECF No. 47. As a result, the Defendant is ineligible for the two-level safety valve decrease.

B.  **Defendant Is Not Eligible for Zero-Point Offender Adjustment Because of Her Criminal History and Because the Offense Resulted in Death**

Under USSG § 4C1.1, a Defendant is eligible for the Zero-Point Offender adjustment if the Defendant did not receive any criminal history points and the offense did not result in death. Here, the Defendant has three scorable convictions for a total of three criminal history points, which establish a criminal history category of II. PSR ¶ 36. So, she is ineligible under § 4C1.1(a)(1). In addition, as discussed above, the Parties have stipulated and agreed that Defendant's sale of fentanyl caused the victim's death, rendering Defendant ineligible under § 4C1.1(a)(4). Therefore, Defendant is not eligible for the zero-point offender adjustment.

C.  **Section 3553(a) Factors Support a Sentence of 120 Months**

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007) (citing *Rita v. United States*, 551 U.S. 338, 347-48 (2007)). The sentencing court must then consider all seven factors listed in 18 U.S.C. § 3553(a) to "determine whether they support the sentence . . . ." *Id*. & n.6. The factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims. 18 U.S.C. § 3553(a).

The United States recommends a variant sentence of 120 months based on the application of the § 3553(a) factors. A 120-month sentence fulfills the aims of § 3553(a) and marks a sufficient, but not greater than necessary, sanction to account for Defendant's criminal actions as well as the mitigating circumstances outlined in the PSR.

A 120-month custodial sentence is appropriate. First, the nature and circumstances of the offense are tragically serious—particularly given type of narcotic, fentanyl, that the Defendant knowingly sold. Second, Defendant committed this offense as an adult in her

twenties with multiple interactions with the criminal justice system that could have provided off-ramps to the lifestyle in which she engaged. At the time of the offense, the Defendant was on summary probation from a San Diego Superior Court conviction and still has an additional pending felony case for robbery. *Id*. ¶¶ 49; 109. Based on Defendant's own messages to the victim, she was well-aware of the deadly danger fentanyl posed. Therefore, this case is representative of the need for specific and general deterrence. Moreover, this Court is familiar with the high guideline range of an overdose death case. A 120-month sentence here accounts for the mitigating considerations under § 3553(a) yet also avoids unwarranted sentencing disparities among similarly situated defendants.

In making its variant and mitigated sentencing recommendation, the Government credits her progress, recovery, and contrition since her arrest. In mitigation, Defendant accepted responsibility for her actions and has sought to belatedly make amends, albeit, around two years after the instant offense was committed. She is a product of an upbringing rife in physical abuse, sexual abuse, and substance abuse through which no child should have had to suffer. Since her arrest and release on pre-trial supervision, Defendant has shown a significant commitment to maintain sobriety. She has had no compliance issues in the past year and has been employed in a full-time retail position since November 2023. PSR ¶¶ 17; 89. During the pendency of this case, Defendant continued with her education and has demonstrated rehabilitative potential based on her compliance with the Court's conditions of pretrial release, which bodes well for her continued rehabilitation. All of this supports the Government's recommended variance below even the low end of the Guideline range. However, even considering those equities, the Government's recommendation takes into account the devastating effect that Defendant's choices had in ending one life, which then contributed to the death of yet another.

Therefore, while Defendant's equities support a downward variance from the low-end of the guideline range, the other § 3553(a) considerations weigh against any further downward variance. The Government's recommended sentence of 120 months in custody and five years of supervised release is the appropriate sentence.

## V.

## **RESTITUTION**

The parties previously executed a Restitution Addendum (ECF No. 47-1) as part of their proposed resolution. The addendum states that "the Government will recommend restitution up to $5,000," but that the amount ordered may be higher depending on information at sentencing. *Id*. at 3.  The Government intended for restitution to cover any travel costs associated with the victim's family appearing at sentencing. However, no family members intend to be present for sentencing, although two victim impact statements have been submitted and copied verbatim into the PSR and PSR addendum. Therefore, it appears that there will be no restitution owed. All funeral costs were born by the U.S. military. Accordingly, the Government intends not to request restitution at the time of sentencing.

//

## VI.

## **CONCLUSION**

The Defendant arranged for her sale of fentanyl powder to an active-duty Marine who subsequently died from ingesting her product. ECF No. 47. The United States recognizes equities in favor of a reduced sentence under § 3553(a), but the Defendant's addiction to and use of the same illegal narcotics should not detract from her demonstrated history of culpability in narcotics related criminality. The need to reflect the seriousness of this offense, provide specific and general deterrence, and avoid unwarranted sentencing disparities all disfavor any additional downward variance. The United States respectfully requests that the Court sentence Defendant to 120 months in custody, followed by five years of supervised release, and a $100 special assessment.

DATED: May 31, 2024                                    Respectfully submitted,

                                                       TARA K. McGRATH
                                                       United States Attorney

                                                       */s/ Arne J. Bussler*
                                                       ARNE J. BUSSLER
                                                       Special Assistant United States Attorney